DETERMINED IN THE

# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY

JUNE TERM, 1918.

---

HILL HABER, RESPONDENT, v. HARRIS GOLDBERG, APPELLANT.

Submitted July 8, 1918—Decided November 27, 1918.

1. In section 10 of the statute of frauds (*Comp. Stat.*, p. 2617; amended, *Pamph. L.* 1911, p. 703; *Comp. Stat., first supp.*, p. 747), concerning the commission of real estate brokers for effecting a sale or exchange of land, the word "exchange" has the same meaning as at common law.

2. When by agreement a party contracts to convey certain land to another, and the other agrees to convey certain land to the former and to pay the difference in value by the giving of a mortgage to the former upon the land to be conveyed to the second party, the agreement is one for a sale, not an exchange; and the deeds to be executed and delivered by and between the parties are not those of an exchange, but of bargain and sale, by which an estate in fee may be granted.

3. On an agreement between defendant and a third party which provided that deeds for real estate should be delivered and exchanged between them on a certain date, and an agreement between the plaintiff and defendant that provided that plaintiff's commission as real estate broker should be paid by defendant on the date set for the delivery of the deeds, which did not take place because the third party was unable to furnish a market-

able title to the premises he was to convey as part of the consideration, the commission was, nevertheless, earned because the defendant sued the third party for breach of the contract negotiated by the broker and recovered damages therefor.

4. Although in an agreement between a principal and his broker for the sale of real estate, the rate of. commission on the dollar is not provided for as required by the terms of section 10 of the statute of frauds, *supra;* nevertheless, the fixing of a sum certain by way of commission is within the true intent and meaning of the act, and the broker is entitled to recover it. *Mendles* v. *Danish,* 74 *N. J. L.* 333, approved.

5. A broker, having brought about the sale of another property for his principal, and the amount of the commission to be paid on that sale having been in dispute between them,. a receipt given by the broker acknowledging payment of a certain sum for selling the property there in dispute, concluding "and have no claim whatsoever," does not operate as a release of a claim for commission by the broker upon a sale of other property.

On appeal from the Supreme Court.

For the appellant, *John H. Sheridan.*

For the respondent, *Isador Haber.*

The opinion of the court was delivered by

WALKER, CHANCELLOR. This was a suit by a broker for commissions in a real estate transaction—whether it was a sale or exchange will be treated of hereafter. The action was brought in the Second District Court of Jersey City. The plaintiff had judgment and defendant appealed to the Supreme Court where the judgment was affirmed. Appeal was thereupon taken to this court.

The plaintiff had brought the defendant and a third party together and they entered into an agreement in writing for conveying from each to the other certain real properties, and at the same time defendant signed an agreement to pay to the plaintiff the sum of $300 "as commission for the sale of my property (describing it shortly) to be paid on the date set for the delivery of the deed." In the same agreement entered into by the defendant with the third party the defendant agreed to convey to the third party certain lands described,

and the third party agreed to convey to the defendant certain lands described, the difference in value of the respective premises to be secured by mortgage.

The defendant-appellant contends that what the parties agreed to do was to *exchange*, not to *sell*, their respective properties, and that as plaintiff had no agreement for commissions on an *exchange* he cannot recover under the statute of frauds.

The pertinent provision of the statute invoked is *Comp. Stat.*, p. 2617, § 10; amended, *Pamph. L.* 1911, p. 703; *Comp. Stat., first supp., p.* 747. The enactment is:

"No broker or real estate agent selling or exchanging land for or on account of the owner shall be entitled to any commission for the sale or exchange of any real estate, unless the authority for selling or exchanging such land is in writing, and signed by the owner or his authorized agent, or the authority of the broker or real estate agent to make a sale or exchange of such land is recognized in a writing or memorandum signed by the owner or his authorized agent, whether or not such writing or memorandum is signed by said owner or agent before or after such sale or exchange had been effected, and the rate of commission on the dollar shall have been stated therein."

There is a clearly-defined distinction between a sale and an exchange of land, and the statute just quoted recognizes that distinction. The words "selling or exchanging," and its equivalent "sale or exchange," occur five times in the section, and would appear to have been deliberately used by the legislature with reference to the law of conveyancing.

Speaking of conveyances by the common law, Blackstone says:

"An exchange is a mutual grant of equal interests, the one in consideration of the other. The word "exchange" is so individually requisite and appropriated by law to this case that it cannot be supplied by any other word or expressed by any circumlocution. The estates exchanged must be equal in quantity; not of value, for that is immaterial, but of interest; as fee-simple for fee-simple, a lease of twenty years for a lease of twenty years, and the like." 2 *Bl. Com.* 323.

Only one conveyance is required. *Burd. Real Prop.* (1914) 606. A form of this sort of deed is to be found in *Bird. Abb. Cl. & Con. Asst.* (3d ed.), at *p.* 686. It provides: This indenture made, &c., between A B, &c., of the first part, and Y Z, &c., of the second part: Witnesseth, that the party of the first part has given and granted, &c., to the party of the second part, &c. (describing the land). To have and to hold, &c. And the party of the second part has likewise given and granted, &c., to the party of the first part, &c. (describing the land), in exchange of and for lands hereinabove mentioned of the party of the first part. To have and to hold, &c. Provided, that if it shall happen that either of the parties, &c., shall at any time hereafter by color or means of any former or other conveyance, or otherwise, howsoever, be ousted or evicted of and from the possession of their premises, &c., or any part thereof, then and in such case the grant and conveyance made by these presents shall be utterly void and of none effect; and thenceforth it shall and may be lawful to and for the parties so ousted or evicted, into his or their former premises, &c., to re-enter and the same to have again repossess and enjoy as of his and their former estate.

This last and distinguishing feature of a deed of exchange is expressly noticed by Judge Sharswood in *Gamble* v. *Mc-Clure*, 69 *Pa. St.* 282, 284, where he observed that, undoubtedly, where there is a technical exchange of lands the law annexes not a mere implied covenant of warranty but an actual warranty with a condition of re-entry, so that if the title to either tract of land turns out to be bad, and the party or his assigns should afterward be evicted, he or they can recover back their tract which was given in exchange. But to produce this legal consequence it is absolutely necessary that the word "exchange"—*excambium*—should be used. No other word can supply its place, however equivalent its significance. *Co. Litt.* 50b, 384a. It has resulted from this old and well-established rule of law that technical exchanges have been entirely abandoned in modern conveyancing—both English and American. The reason is obvious. It imposes on the purchaser of either tract the burden and risk of examining and

being satisfied with not only the title of the land which he purchases, but also that of the other tract which was exchanged for it. Hence, mutual deeds of bargain and sale, with the usual covenants of title, are always preferred and adopted.

In *Hartwell* v. *DeVault*, 159 *Ill.* 325, the word "exchange" is used in the Illinois statute relating to dower (providing for dower in lands exchanged), and it was held to have the same meaning as at common law—as that expressed by Blackstone.

In *Cass* v. *Thompson*, 1 *N. H.* 65, where parties entered into agreement to exchange farms in pursuance of which each conveyed to the other by a deed in which, for an expressed consideration in money, "he gave, granted, bargained and sold;" it was held that this was not an exchange properly so called, and that the widow of the deceased grantor was endowed in both properties.

In *Wilcox* v. *Randall*, 7 *Barb.* 633, it was observed that there was no exchange of equal interests. It was not even an exchange of land for land. That if the rule is to prevail, where half of the consideration consists of money or personal property, the other half being land, it may also prevail where one thousand acres of land are exchanged for a single acre and $9,000 in money. This was not, therefore, "a mutual grant of equal interests, the one in consideration of the other."

Now, if the transaction involved in this case was not that of an exchange of land, it must be apparent that it was a sale. Because part of the consideration of a sale of land is the conveyance to the grantor of certain other land, the transaction does not thereby become one of exchange of estates at common law. The fact that part of the consideration, or all of it, is land, does not in and of itself amount to a technical exchange. That occurs only, as we have seen by the authorities above quoted, when the exchange is of equal interests (not of value, but estates), and when the conveyance, whether by a single deed or by deeds exchanged between the parties—if that be allowable, and doubtless it is, although only one deed is required—and the conveyance, or conveyances, provide for re-entry upon ouster or eviction. A glance at the articles of

agreement signed by the defendant and his wife and the third party and his wife, clearly shows that the transaction in question was a sale and not an exchange of lands. The party of the first part agrees to convey certain lands and premises to the party of the second part, at a certain valuation; and the party of the second part agrees to convey to the party of the first part certain land and premises at a certain valuation. The premises to be conveyed by the defendant are to be subject to certain mortgages, and the difference in value of the respective premises, over and above encumbrances, the party of the second part agrees to pay by giving the defendant a bond and mortgage on the premises to be conveyed by him, in a sum the exact amount of which is to be ascertained. Each of the parties to convey the property described "as sold by that party" free from all encumbrances, except as specified, and to deliver a proper warranty deed containing full covenants to convey and assure to the grantees an absolute fee.

It will be observed that there is here no agreement for an exchange of lands, but one for a sale in fee-simple, subject to certain encumbrances. And it is significant, too, that the word "sold" is used in the agreement, which indicates that the parties meant a sale and not an exchange.

This disposes of the contention that the agreement was for an exchange. It was not; it was for a sale. The deeds agreed to be executed and delivered by and between the parties were not those of an exchange, but of bargain and sale, which is a contract or bargain by the owner of land, in consideration of money or its equivalent, to sell land to another person, whereupon a use arises in favor of the latter, to whom the seisin is transferred by force of the statute of uses; and by such a deed an estate may be granted in fee. See *Bouv. Dict. (Rawle's rev.)* 1198, and authorities cited.

When in modern practice mutual conveyances are used, the one in consideration of the other, the incidents of a common law exchange do not apply, and there is no need of using the word "exchange." Technical exchanges of land are practically obsolete in modern conveyancing, mutual deeds of

bargain and sale being substituted therefor. *Burd. Real Prop.* (1914) 607.

It is contended by the defendant-appellant that as the agreement between defendant and the third party provided that the deeds should be delivered and exchanged on or before August 1st, 1915, at a certain time and place specified, and the agreement between plaintiff and defendant provided that the commission be paid on the date set for the delivery of the deeds, the plaintiff is not entitled to recover his commission because the contract was based upon the contingency of title passing between the parties, which has not taken place. The recent case of *Leschziner* v. *Bauman,* 83 *N. J. L.* 743, in this court, is cited as authority for this proposition. In that case Bauman agreed to pay Leschziner a commission "on the date of passing of title or July 15th." The transaction did not go through because another agreement was entered into, which failed of consummation because the proposed grantee of the broker's principal was unable to furnish a marketable title to the premises he was to convey by way of exchange— not a technical exchange at common law but as part of the consideration. It was held that the contract was contingent upon the sale of the property and the passing of title, and that in the absence of proof of the fulfillment of that contingency a direction of a verdict for the defendant was proper.

Now, in the case at bar, the conveyances agreed to be made between the parties to the agreement of sale were not executed and delivered, and that for the reason that the title of the third party to the premises to be conveyed by him to the defendant was ascertained to be defective and unmarketable. However, the broker's commission cannot be defeated because title did not pass, for, by suing the third party for a breach of the contract between them and recovering damages therefor, the defendant, as between himself and the plaintiff, was not entitled to repudiate his undertaking with the latter for compensation for negotiating the very contract which was the basis of that suit.

Although in the agreement between the defendant and his broker the "rate of commission on the dollar" was not pro-

vided for as required by the terms of the tenth section of the statute of frauds; nevertheless, the fixing of a sum certain by way of commission is within the true intent and meaning of the act. See *Mendles* v. *Danish,* 74 *N. J. L.* 333, wherein it was held by the Supreme Court that in construing this statute the spirit of the law should control the letter, and that a sum certain fixed in an agreement could be recovered by the broker.

The plaintiff having brought about the sale of other property for the defendant, and the amount of commissions to be paid on that sale having been in dispute, the defendant paid the plaintiff a certain sum and took a receipt from him containing these words: "Received  *  *  *  $375.00 in full payment of the commission for selling my three houses on 19th street, West New York, and have no claim whatsoever." This receipt was given September 5th, 1916, which was after the performance of plaintiff's services for defendant in this case; and defendant contends that this writing operates as a release by plaintiff to defendant for any and all demands due on or before the date just mentioned, including those on the sale in this case. In view of the fact that the commissions on this other sale were in dispute between the parties, it is apparent upon the face of the paper that it is a receipt in full for the commissions which were in dispute in that particular matter, and that it has none of the characteristics of a general release which would operate to prevent recovery by the plaintiff for the commissions which are the subject-matter of the suit at bar. Such an obvious proposition needs no citation of authorities for its support.

Upon the whole case we are of opinion that the Supreme Court reached a right result and that its judgment should be affirmed, with costs.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, BERGEN, KALISCH, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER, JJ. 11.

*For reversal*—None.