11 N.J. Super. 16 (1950)
77 A.2d 505
F. PAUL MARSCHALK, PLAINTIFF-APPELLANT,
v.
ANTHONY WEBER AND STELLA WEBER, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 27, 1950.
Decided December 20, 1950.
*19 Before Judges McGEEHAN, JAYNE and WM. J. BRENNAN, JR.
Mr. Charles C. Carroll argued the cause for appellant (Messrs. Carroll & Skettini, attorneys).
Mr. Hugh C. Spernow argued the cause for respondents (Messrs. Hunziker & Hunziker, attorneys).
The opinion of the court was delivered by JAYNE, J.A.D.
The present appeal invites a consideration of a judgment of involuntary dismissal entered in this action in pursuance of the determination of the trial judge at the conclusion of the plaintiff's case.
It is evident that on July 13, 1949, the defendants executed a memorandum in writing granting sole and exclusive authority, for a period of three days from that date, to the plaintiff, a duly licensed real estate broker, to procure a purchaser for them of two contiguous parcels of land consisting of approximately eight acres in the City of Clifton, with the two dwellings situate thereon, for the price of $57,500, or "for any other price or on any other terms to which the seller may consent in writing * * *."
The writing also contains the following notable and significant terms:
"The seller agrees to pay the agent a commission of 5 per cent of the gross sale price in case said property or any portion is sold or exchanged by the agent, the seller, or any other person during the term of this contract."
*20 "The seller agrees to assist and cooperate in such sale."
"Commission or commissions shall be earned when the agreement of sale is executed by the buyer and seller, said commission shall not be payable until the deed is delivered and the purchase price is paid in full when the same shall be due and payable.
"The seller represents that he has the legal right to sell said property, and that he can and will execute a sufficient instrument of conveyance."
It is elementary that in the consideration of a motion to nonsuit or its progeny, the motion to direct an involuntary dismissal of the action, all of the evidence which supports the alleged cause of action of the party against whom the motion is made must be accepted as true, and such party shall be accorded the evidential benefit of all the inferences that may logically and legitimately be deduced therefrom. Lipschitz v. New York & New Jersey Produce Corp., 111 N.J.L. 392 (E. & A. 1933); Scarano v. Lindale, 121 N.J.L. 549 (E. & A. 1939); Schwartz v. Rothman, 1 N.J. 206 (1948); Fischetto Paper Mill Supply, Inc., v. Quigley Co., Inc., 3 N.J. 149 (1949).
There was testimony from which the jury might have logically and legitimately inferred that on the evening of July 14, 1949, the plaintiff, through his salesman, submitted to the defendants a bona fide offer from the Rusmont Corporation, a corporation of New Jersey, to purchase the property designated in the agency agreement for the specified price, provided the defendants would also convey to the purchaser another parcel of approximately one-half acre in the same vicinity for the purchase price of $1,500.
The defendants sought time to consider and on the following evening, July 15, 1949, they orally expressed their approval of the proposed terms of the offer. The following morning a check of the Rusmont Corporation in the sum of $1,000 was delivered to and received by the defendants.
Monday afternoon, July 18, 1949, at the offices of the attorney of the defendants, was designated by mutual consent as the time and place for the execution of the agreement of sale. At the appointed time the defendants' attorney announced *21 that the transaction would not be consummated and he returned the check. The defendants themselves explained to the broker, "We have changed our minds. Of course, we will take care of you. Do not worry about it. We have changed our minds about selling."
It is immediately observed and indeed acknowledged that the written memorandum, in so far as it conferred exclusive authority upon the plaintiff to negotiate a sale of the particular real estate therein identified, was in conformity with the statute. R.S. 25:1-9. The history of the statute is briefly told in Fontana v. Polish National Alliance, &c., 130 N.J.L. 503 (E. & A. 1943).
It is the settled rule that ordinarily a broker who is duly employed earns his commission when he procures for the owner a purchaser able and willing to comply with the terms specified in the authority thus conferred or with other or different terms which, however, are satisfactory to the owner. S.E. Crowley Co. v. Myers, 69 N.J.L. 245 (E. & A. 1903); Ganley v. Kalikman, 105 N.J.L. 311 (Sup. Ct. 1929); affirmed, 106 N.J.L. 237 (E. & A. 1930); Walsh v. Isgro, 121 N.J.L. 165 (E. & A. 1938); Houston v. Siebert, 129 N.J.L. 468, 472 (E. & A. 1943); Wegmann v. Melniczak, 133 N.J.L. 243 (Sup. Ct. 1945).
In response to a motion for the involuntary dismissal of the action, the learned trial judge stated:
"The question that I have decided here is that while there is a written contract authorizing the sale of two lots (the eight-acre tract) provided the broker acquires a purchaser for those lots, he did not provide a purchaser for those two lots. According to the undisputed evidence here in the case, the purchaser that he provided wanted to buy five lots.
"I have decided in this case that the plaintiff, having failed to provide a purchaser for the two lots as his written contract authorized him to do, he is not entitled to a commission."
Obviously the plaintiff procured a prospective purchaser who submitted a counter-offer at variance with the terms of the authorization. Assuredly the sellers were at liberty to reject it without incurring any liability to the plaintiff, but *22 the testimony disclosed that they announced their approval of and acquiescence in the counter-offer, and in furtherance of the bargain received and temporarily retained a nominal deposit from the proposed purchaser and participated in the selection of a time and place for the execution of a contract of sale.
The plaintiff frankly acknowledged in the prosecution of his action that he was not entitled by reason of the statute to any commission for the sale of the additional one-half acre for the separate and independent price of $1,500 because his authority to sell it was not recognized in any writing or memorandum expressive of the rate of commission and signed by the owners or their authorized agent.
The trial judge seems to have entertained the impression that a variation in the terms of the sale of the designated property from those specified in the memorandum of authority must also be in writing under the statute. Not so. It is sufficient if the authority to sell the property and the rate of commission on the dollar are in writing. Wegmann v. Melniczak, supra.
Chancellor Magie, delivering the opinion of the Court of Errors and Appeals in S.E. Crowley Co. v. Myers, supra, stated (at p. 248): "The ground on which the motions to nonsuit and direct a verdict were rested was that the written agreement, properly construed, limited the liability of defendant to pay commissions, to a sale procured by the broker or real estate agent for cash only. The trial judge charged the jury that such was the true construction of the contract. He left it to the jury whether the provisions for a sale for cash had not been waived by the seller by his acceptance of a purchaser who paid in part in cash and in part by a conveyance to the seller of other real estate, accepted by the seller as equivalent, to make up $30,000 of the sale price of $70,000.

* * * * * * *
"When the consideration is fixed by the owner in the authority given to the agent, at a certain price in dollars, the owner may reject a purchaser procured by the agent who offers *23 to pay the price, not in dollars, but in other property. But if the owner, having the option to reject such an offer, accepts it and takes other property as equivalent for so much of the selling price fixed by his authority, I have no doubt that the agent becomes thereby entitled to his commissions."
Moreover the defendants in their memorandum in the present case empowered the plaintiff to induce a sale of the property "for $57,500 all cash, * * * or for any other price or on any other terms to which the seller may consent * * *."
It is therefore apparent that by the terms of the memorandum the plaintiff was authorized to solicit a purchaser who would agree to acquire the property on terms satisfactory to the owners. Cf. Ganley v. Kalikman, supra.
The words "any other terms" connote in an agreement of this nature "any other considerations" than those definitely specified.
Depending on the fertility of the imagination, one can envision the possibility of numerous counter-offers which are at variance with the so-called "listing price." For examples, the granting additionally by the seller of an easement for a driveway along his adjacent property, the privilege to use the seller's nearby wharf, or the installation of some utility. The variation of the counter offer in view of the provisions of the present memorandum cannot by a reasonable construction be confined solely to variations in the monetary consideration.
And so we are unable to confer our approval of the abstract conclusion that a written authorization to sell a tract of eight acres, which memorandum is in all essential respects in conformity with the requirements of the statute, becomes legally ineffectual and unenforceable where the broker in the pursuit of that authority procures a counter-offer from a competent purchaser to acquire not only the eight-acre tract in accordance with the terms stated in the authorization, but also another tract of one-half acre at a separate price and the owner accepts the counter-offer. Compare, Haber v. Goldberg, 92 N.J.L. 367 (E. & A 1918).
*24 It is important to observe that in the present case the plaintiff erected his alleged cause of action solely upon his written agreement with the defendants with respect to the sale of the tract of eight acres and not upon the oral agreement between the defendants and the prospective purchaser which embraced a sale of an additional one-half acre at a price distinct from that of the eight-acre tract designated in the written memorandum. But where, as here, the offer to purchase the eight acres was made contingent upon the further acquisition by the purchaser of the one-half acre, the service of the plaintiff pursuant to his written authorization was not performed until and unless the defendants acquiesced in the bargain.
We, however, decline to concur in the determination that as between the owner and the broker, inter sese, the variation in the form and substance of the consideration, in this case, must under the statute be evidenced in writing.
Suppose that these defendants had consummated the sale on the terms proposed by the counter-offer and had by means of the exertions of the plaintiff received the $57,500 cash for the eight-acre tract as contemplated by the memorandum of the plaintiff's authorization and in addition $1,500 for the one-half acre, could the defendants in such circumstances utilize the statute of frauds as an asylum of escape from the fundamental principles of justice and turn their backs upon the broker? We think not. The brokerage agreement in its essential elements remained unchanged. It was not rescinded or otherwise nullified. Moreover the agreement itself manifests the contemplation of a vicarious variation of the terms of sale.
But we must in the present case go beyond those observations and consult the express terms and provisions of the memorandum of July 13, 1949. A broker may by special agreement with his principal contractually make his right to compensation dependent on a stated condition or on a specified occurrence, or on a contingency beyond the control of his efforts and perhaps one likely to be governed or influenced by the acts of his principal. Hinds v. Henry, 36 N.J.L. *25 328 (Sup. Ct. 1873); Leschziner v. Bauman, 83 N.J.L. 743 (E. & A. 1912); Duffy & Thomas, Inc., v. Miller, 5 N.J. Misc. 77 (Sup. Ct. 1927).
The principle enunciated in Hinds v. Henry, supra, however, has never been permitted to enable a vendor unjustly to escape liability to the broker by means of the vendor's own malfeasance or purely capricious refusal to perform his agreement. Actus legis nemini facit injuriam. Rauchwanger v. Katzin, 82 N.J.L. 339 (Sup. Ct. 1912); Lehrhoff v. Schwartsky, 2 N.J. Misc. 353 (Sup. Ct. 1924); Keifhaber v. Yannelli, 9 N.J. Super. 139 (App. Div. 1950); cf. Dermody v. New Jersey Realties, 101 N.J.L. 334 (E. & A. 1925), in which the vendor made use of the contract of sale.
In our analytical examination of the record of the case sub judice, our attention converges predominantly upon one of the provisions of the memorandum. Noticeably, the authorization of the plaintiff was to obtain a purchaser of the designated property at the price of $57,500 cash or "on any other terms to which the seller may consent in writing." It is this contractual provision that concerns us, not the requirements of the statute.
The consent of the defendants in writing to a sale "on any other terms" was a contractual component of the authorization by which the plaintiff was bound and upon which the defendants undoubtedly could have relied.
But in recognition of the state of the existing proof, it was within the province of the jury to infer that the defendants accepted the counter-offer and did not throughout the course of the transaction choose to avail themselves of the provision relating to their consent in writing.
Implicit in the explanation of the defendants of their refusal to consummate the sale is confirmation that they originally acquiesced in the bargain and then: "We have changed our minds. * * * We have just changed our minds about selling."
A survey of the pleadings and of the pretrial order reveals that the pivotal controversial issue of fact in this action implicated, *26 vel non, the consent of the defendants to accept the terms of the counter offer.
In our modern methods of review we are permitted to subordinate the formularies of artistic pleadings to the consideration of the evidence in its relation to the substantial rights of the parties. Patently, the question of the consent of the defendants is caused by the evidence to envelop the issue of waiver and perhaps of estoppel.
The course of conduct pursued by the defendants in the accompanying and surrounding circumstances may not be entirely ignored. Primarily it must be realized that the plaintiff's authorization was limited to a period of three days from July 13, 1949. On the evening of July 15, 1949, the defendants orally announced to the representative of the plaintiff their acceptance of the counter-offer. On the following morning the plaintiff procured and delivered to the defendants the deposit of the proposed purchaser in the form of a check bearing the following endorsement: "Deposit for property  c/a as Block 350  lot No. 10 & No. 25 and Block 266 lots 10AA, 11AA & 21. As shown in plot map  City of Clifton, N.J. Price $59,000." The defendants accepted the check and retained it. The defendants thereupon assured the representative of the plaintiff that they would arrange an appointment with their attorney for the preparation and execution of the contract of sale. It may be inferred that they did so. Such was the situation created and maintained by the defendants until the period of the plaintiff's authority expired.
Indeed, the defendants do not in their brief submitted in this appeal invoke the provision concerning their consent in writing.
Independent of a requirement of the statute of frauds, a provision declaring that the acceptance "of other terms" shall be in writing is not in all circumstances conclusively operative. Its initial effectiveness may be subsequently waived and the intention to do so may be disclosed by the conduct of the parties.
*27 While the judgment of dismissal resulted from a misapplication in our opinion of the statute of frauds, yet we have nevertheless examined the case comprehensively and resolve that the issues of the defendants' consent to the acceptance of the counter-offer and of a waiver, if any, by the defendants of the provision requiring such consent to be in writing, were such as to have required the trial judge to deny the motion to dismiss and to call upon the defendants to proceed with their defense. Cf. Barres v. Notte, 7 N.J. Misc. 941 (Sup. Ct. 1929).
The judgment is therefore reversed and the record returned to the Law Division for a trial de novo.