34 N.J. Super. 333 (1955)
112 A.2d 285
ABRAHAM TODISS AND FRED SIRIS, PLAINTIFFS-RESPONDENTS,
v.
HENRY GARRUTO AND IDA M. GARRUTO, HIS WIFE, DINA LUCIDI AND JOSEPH LUCIDI, HER HUSBAND, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued February 21, 1955.
Decided March 11, 1955.
*335 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Warren C. Douglas argued the cause for appellants (Mr. Bruce A. Wallace, attorney).
Mr. Irvin M. Lichtenstein argued the cause for respondents (Mr. Raymond L. Siris, attorney).
The opinion of the court was delivered by JAYNE, J.A.D.
On April 6, 1954 the defendants duly executed a contract in writing by the terms of which they agreed to sell and convey and one William A. Ferguson agreed to purchase the business of the defendants together with the associated real and personal property identified as Bay Shore Bar and Restaurant, situate on Pelican Island, Dover Township, Ocean County, for the price of $61,650.
An acquaintance with paragraph 16 of the contract is imperative. It reads:
*336 "16. The Sellers agree to pay to ABRAHAM TODISS, 521 Cooper Avenue, Camden, N.J. and FRED SIRIS, 315 Market Street, Camden, N.J., Licensed Real Estate Brokers, a commission of $1,650.00, which said commission shall be paid on the date of settlement and shall be paid 50% thereof to Todiss and 50% thereof to Siris. It is understood and agreed that this commission is contingent upon the transaction being consummated and in the event that said transaction is not consummated then and in that event no commission shall be payable to said brokers."
We italicize the portion of the paragraph to accentuate immediately its supreme significance in the consideration of the legal problem submitted for determination by the present appeal.
The additional facts of essentiality may be summarized as follows:
1. Upon the execution of the contract the down payment of $6,165 was pursuant to a requirement thereof deposited with the vendors' attorney "in escrow pending final settlement."
2. The bill of sale and the deed of conveyance were to be delivered by the vendors and the purchase price paid by the vendee on May 12, 1954 at the time and place designated in the contract.
3. The vendors, the defendants in this action, were ready, able and willing to perform the contract, but almost immediately after its execution the vendee, Ferguson, "advised (the vendors) that he was not going through with the transaction because of poor health and because of the weight of his other work and responsibilities."
4. In that exigency the parties to the contract mutually agreed as evidenced by written releases dated April 14, 1954 that the vendee forfeit unto the vendors the escrow fund of $6,165 and that the contract be rescinded by mutual accord.
5. In consequence the sale contemplated by the contract was not consummated on May 12, 1954 or subsequently.
6. The contract did not contain any clause relating to the penalty, forfeiture, or admeasurement of liquidated *337 damages to be incurred by either party in the event of its breach.
7. Observably, the initial deposit was to be retained in escrow "pending final settlement" and the commission was stipulated to be earned "upon the transaction being consummated," and if the said transaction was not consummated "then and in that event no commission shall be payable to said brokers."
The plaintiffs thereafter on July 20, 1954 instituted this action to recover the commission of $1,650. With the factual circumstances in the posture hereinbefore related, motions for a favorable summary judgment were made on behalf of the plaintiffs and for the defendants respectively. The motion of the defendants was denied. The plaintiffs' motion prevailed, and the defendants appeal from the consequential final judgment.
It is not intimated that there existed any material issue of fact which should have impeded the granting of a summary judgment. The legal propriety of the judgment is the controversial subject debated by counsel.
To indicate the path of our reasoning, we shall discuss in the following order the main factual components of the alleged cause of action and the applicable principles of law. Initially it must be understood that the action rests upon the alleged breach by the defendants-vendors of their contractual obligation to the plaintiffs embodied in the contract of sale of April 6, 1954.
The authority of a broker to sell and to collect a commission within the provisions of the statute of frauds may be embraced by the terms of the contract of sale executed by the owner. Kelly v. Demorest, 95 N.J.L. 35 (Sup. Ct. 1920); Nary v. Heath, 9 N.J. Misc. 771 (Sup. Ct. 1931); Hatch v. Dayton, 130 N.J.L. 425 (Sup. Ct. 1943). In such a situation it is elementary that the right of the broker to the stipulated commission is measured by the pertinent terms of the contract of sale. Alnor Construction Co. v. Herchet, 10 N.J. 246, 253 (1952).
*338 It is the settled rule that in the absence of some qualifying or oppugnant expression, a broker who is duly engaged ordinarily earns his commission when he procures for the owner a purchaser ready, able, and willing to comply with the terms specified in the authority thus conferred, or with other or different terms which, however, are satisfactory to the owner. Marschalk v. Weber, 11 N.J. Super. 16, 21 (App. Div. 1950), certification denied, 6 N.J. 569 (1951); Richard v. Falleti, 13 N.J. Super. 534 (App. Div. 1951); Alnor Construction Co. v. Herchet, supra, in all of which citations of the earlier decisions appear.
The aforementioned rule of law recognizes, however, that a broker may, by a special agreement with his principal, contract to fix definitely or to postpone the time of the payment of his commission or, indeed, conditionally make his compensation entirely dependent on a stated contingency. Hinds v. Henry, 36 N.J.L. 328 (Sup. Ct. 1873). Illustrative are the decisions discussed in Richard v. Falleti, supra.
In the present case we meet a special agreement between the vendors and the brokers by the terms of which the commission is made due and payable "on the date of settlement" but is made contingent "upon the transaction being consummated," and if not, "no commission shall be payable to said brokers."
We are therefore guided next to the consideration of the intended import and meaning of the words "consummate" and "transaction." The rule of interpretation is enunciated in Corn Exchange Nat. Bank & Trust Co. of Philadelphia v. Taubel, 113 N.J.L. 605 (E. & A. 1934). In common acceptation the meaning of the transitive verb "consummate" is "to bring to completion that which was intended or undertaken to be done." Assuredly in the present instance the meaning of the word "transaction" is the one commonly ascribed to it: a business deal such as the act of buying and selling. Webster's Int. Dict. (2d ed.) Here the transaction to which the parties evidently referred was the contract of sale. We are not aware of any exceptional usages or practices *339 or of any feature of the surrounding circumstances to cause us to impute any esoteric connotations to the words as employed in the contract.
Concededly the contract of April 6, 1954 was not performed and the contemplated sale and conveyance of the personal and real property were not completed, so at this point we are disposed to express the conclusion that under the terms of the brokerage agreement the accrual of the commission was intended to be made contingent upon the fulfillment of the contract of sale. Morse v. Conley, 83 N.J.L. 416 (Sup. Ct. 1912); Leschziner v. Bauman, 83 N.J.L. 743 (E. & A. 1912); Murray Apfelbaum, Inc., v. Topf, 104 N.J.L. 343 (E. & A. 1928); Lippincott v. Content, 123 N.J.L. 277 (E. & A. 1939); Alexander Summer Co. v. Weil, 16 N.J. Super. 94 (App. Div. 1951). We have here a promise to pay the brokers upon a condition which has not eventuated.
We then necessarily advance to the question whether the act of the vendors in resorting to a compromise agreement of rescission, in its legal operation expunged the effectiveness of the contingent provision of the brokerage agreement.
In the present case we shall, or perhaps must, infer that the vendee unjustifiably refused to purchase the property, and further assume in recognition of the weight of the authorities that the vendors owed no duty to the brokers to tender the instruments of transfer to the vendee or to institute an action either for the specific performance of the contract of sale or for the recovery of compensatory damages for its breach. Amies v. Wesnofske, 255 N.Y. 156, 174 N.E. 436, 73 A.L.R. 918 (Ct. App. 1931).
The principle of law is that the condition upon which the payment of the commission is contractually made to depend is rendered legally inoperative only where the vendors have indulged in some affirmative act to hinder or prevent the consummation of the contract of sale. This principle has the support of an abundance of judicial authority in numerous jurisdictions. The discordancy and divergency of opinion *340 discoverable in the decisions are noticeably attributable to the contrastive and differential conceptions of the applicability of the principle to the circumstances of the given case in view of the terms of the brokerage contract. So here, the question on this feature of the case is whether amid the facts of the case the principle is to be influential in the determination of the issue.
Mere passive acquiescence in a declared default is not recognized as an act of prevention or hindrance. Amies v. Wesnofske, supra. Is the somewhat exceptional and distinguishable fact that the down payment was not in the hands of the vendors but conditionally in escrow factually and legally significant? Here a mutual bargain between the vendors and the vendee achieved the release of the escrow fund to the vendors, as well as the rescission of the contract.
True, nothing in the contract of sale expressly regulated the destination of the escrow deposit or any part thereof in the event of a breach by the vendee. Its payment to the vendors was also in suspense under the terms of the contract of sale until the "date of settlement." What amount of damages the vendors incurred as a result of the breach of the contract by the vendee was not at that time definitely established. It is not evident that the property was worth more or less than the price the purchaser contracted to pay for it. Although the vendee was manifestly unwilling to purchase, it does not appear that he was financially or otherwise unable to do so.
Obviously a new conciliatory bargain into which the grantors were not compelled to enter in the nature of a novation of obligations replaced the former contract. Whether without it the contract of sale might have been completed is purely conjectural, but apparent it is that in the actual circumstances the contract was mutually rescinded and its consummation abandoned by the voluntary compromise of the vendors and the vendee.
We must not only appreciate the relevant significance of all of the aforementioned postulates, but we must also determine *341 whether those circumstances extinguished, perhaps by means akin to waiver, the legal substantiality and effectiveness of the express condition precedent contained in the brokerage agreement.
We are invited to consult the decisions in Haber v. Goldberg, 92 N.J.L. 367 (E. & A. 1918) and in Dermody v. New Jersey Realties, 101 N.J.L. 334 (E. & A. 1925). Commodious decisions rendered in other jurisdictions may be found cited in 51 A.L.R. 1399 and in 73 A.L.R. 918, particularly the majority and dissenting opinions of the learned judges in Amies v. Wesnofske, supra.
After citing with approval the decision in Haber v. Goldberg, supra, our former Court of Errors and Appeals declared in Dermody v. New Jersey Realties, supra, 101 N.J.L. on page 336, that:
"Where a real estate agent produces a purchaser able to buy, who is accepted by the vendor, with whom he enters into a contract, but afterwards defaults and settles with the vendor by the payment of a sum of money as damages for his breach of the contract, the agent's commission under his contract with the vendor is earned, notwithstanding it was stipulated to be paid at the time of passing title, which did not pass, because the contract of settlement substitutes payment of damages to the vendor, in the place of the purchase-money stipulated in the contract of sale and purchase, which contract was brought about by the agent's services."
It is noticeable that in each of those cases the broker had earned his commission, but the debatable obstacle was the provision of the brokerage agreement which expressly deferred its payment until the passage of title. It was not in the category of a contingency but in the nature of a limitation. Vide, Duffy & Thomas, Inc. v. Miller, 5 N.J. Misc. 77 (Sup. Ct. 1927); Forman v. Bedminster Land Co., 110 N.J.L. 1, 3 (Sup. Ct. 1932); Lippincott v. Content, supra.
Assuredly the law disables a vendor from escaping liability to the broker by invoking the contingency clause where the non-performance of the contract of sale is attributable to the malfeasance or fraudulent, arbitrary, or capricious *342 conduct of the vendors. Marschalk v. Weber, supra; Alexander Summer Co. v. Weil, supra.
In the present case it is not evident that the announced refusal of the vendee to consummate the contract of sale was in any wise induced by the vendors. Nor is it disclosed that the vendors and vendee deceitfully contrived through the medium of the compromise agreement to defeat the claim of the brokers. Upon the occurrence of the breach the vendors in reality occupied the situation of passive victims searching only for available salvage.
It must be recognized that persons are at liberty to incorporate their own conditions and limitations in their contracts subject only to the legality of the purpose and the considerations of public policy. The brokerage contract with which we are here concerned clearly manifests the definite intention of the parties that the commission was to be "contingent upon the transaction being consummated and in the event that said transaction is not consummated then and in that event no commission shall be payable to said brokers."
We are not persuaded that in the circumstances of the present case the conduct of the vendors in entering into the agreement of compromise participated in the hindrance or prevention of the consummation of the contract of sale within the application of the legal principle akin to that of waiver.
We conclude that the right of the plaintiffs to compensation was restricted by the terms of their engagement.
Judgment reversed.