92 N.J. Super. 271 (1966)
223 A.2d 199
ELLSWORTH DOBBS, INC., A NEW JERSEY CORPORATION, PLAINTIFF-RESPONDENT,
v.
JOHN R. JOHNSON AND ADELAIDE P. JOHNSON, HIS WIFE, DEFENDANTS-APPELLANTS AND THIRD-PARTY PLAINTIFFS,
v.
JOSEPH IARUSSI, THIRD-PARTY DEFENDANT, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 13, 1965.
Decided September 27, 1966.
*273 Before Judges GOLDMANN, FOLEY and COLLESTER.
Mr. Lee A. Holley argued the cause for defendants-appellants (Messrs. Holley and Kroner, attorneys).
Mr. Thomas L. Morrissey argued the cause for plaintiff-respondent (Messrs. Carpenter, Bennett & Morrissey, attorneys; Mr. John C. Heavey, Jr. on the brief).
*274 The opinion of the court was delivered by COLLESTER, J.A.D.
This is an appeal by defendants John R. Johnson and Adelaide Johnson from a judgment in the amount of $15,000, plus interest, entered upon a directed verdict by the court below as to their liability to plaintiff Ellsworth Dobbs, Inc. (Dobbs) for a real estate commission, and a jury verdict as to the amount thereof. Defendant Joseph Iarussi appeals from a jury verdict of $15,000, plus interest, in favor of plaintiff for breach of an implied contract.
Dobbs, a real estate broker, was authorized by the Johnsons to act as an agent in the sale of their 144-acre farm property in Bernards Township. The broker was approached by Iarussi, a builder of one-family houses, who was seeking development sites. Through Dobbs' efforts, the Johnsons entered into a contract of sale with Iarussi on May 1, 1961. The agreed sales price was $250,000. $10,000 was to be paid on execution of the agreement; the balance to be paid at closing of title on September 1, 1961 by execution of a purchase money mortgage in the amount of $240,000. The contract further provided that the mortgage would contain a clause whereby each lot would be released from the mortgage lien upon payment of $2,500 by Iarussi and that the purchaser would be entitled to a credit of four lot releases for the original $10,000 deposit on the contract.
Four days later the parties executed an addendum altering the terms of payment by providing for a downpayment of $1,500, a payment of $1,000 on June 1, and a payment of $10,000 at the closing when a purchase money mortgage for the remaining $237,500 would be executed.
The contract contained the following provisions for payment of a real estate commission of $15,000 to plaintiff:
"The commission hereinafter mentioned shall be payable as follows: $5,000.00 when sellers shall have received a total of $25,000.00 on account of the above purchase price ($10,000.00 herewith and $15,000.00 on account of the principal sum of the above mentioned purchase money note and mortgage); an additional $5,000.00 when an *275 additional $25,000.00 shall have been paid on account of the principal sum of purchase money note and mortgage; and the remaining $5,000.00 when an additional $25,000.00 shall have been paid on account of the principal sum of said purchase money note and mortgage. The entire commission of $15,000.00 shall become immediately due and payable upon any sale or assignment by sellers of said purchase money note and mortgage.

* * * * * * * *
And the Seller hereby agrees to pay Ellsworth Dobbs, Inc. a commission of Six (6) % on the purchase price aforesaid, said commission to be paid in consideration of services rendered in consummating this sale; said commission to become due and payable as above mentioned."
Iarussi made the first two payments totaling $2,500 to the Johnsons. However, on September 1, 1961, title did not close because Iarussi lacked the necessary financial backing. The Johnsons agreed to extend the closing date on condition that Iarussi pay interest on the purchase price and taxes from September 1 until the actual closing date.
On January 30, 1962 the Johnsons sought a reduction in the amount of the real estate commission called for in the contract. By letter dated January 31 Theodore Fleming, plaintiff corporation's vice-president, agreed to reduce the commission from $15,000 to $10,000. The reason for the execution of the agreement and the binding effect thereof is disputed. Fleming claims the reduction was agreed to on condition that the Johnsons would compromise their claims for interest and taxes with Iarussi and close the title promptly and that the Johnsons did not comply with this condition. The Johnsons claim the reduction was agreed to upon their agreement to send a time of the essence letter to Iarussi  a condition which they fulfilled.
On February 9, 1962 the Johnsons' attorney sent Iarussi a letter making time of the essence and setting February 20 as the closing date. It included a claim for $7,912 due for interest and taxes from September 1, 1961. On February 20 Iarussi appeared prepared to pay $10,000, but the Johnsons refused to convey unless the accrued interest and taxes were paid. This dispute not being resolved, title was not closed.
*276 Immediately following the abortive closing Iarussi instituted suit against the Johnsons for specific performance of the contract. The Johnsons filed an answer and counterclaim seeking specific performance and a judgment for accrued interest and taxes. They then moved for summary judgment. The Chancery judge granted partial summary judgment ordering Iarussi to close title and pay the purchase price on May 15 and transferring the Johnsons' damage claims to the Law Division.
On May 15 Iarussi again lacked financial backing and could not close. As a result the Johnsons and Iarussi executed an agreement in which (1) they mutually released each other from all obligations under the contract of sale and the Chancery Division's judgment, (2) Iarussi agreed to indemnify the Johnsons for any claims for commission brought by Dobbs, and (3) the Johnsons agreed to repay the $2,500 paid by Iarussi as deposits on the contract when, as and if, the premises were sold and they received $25,000 on account of the purchase price.
Thereafter Dobbs brought suit against the Johnsons for the broker's commission which it contended had been earned. The Johnsons filed an answer denying liability, contending that the commission was conditional, and that plaintiff had failed to produce a ready, willing and able buyer. The Johnsons counterclaimed for $250 allegedly due for deferring the closing date for one month at plaintiff's request, and for $3,000 in legal expenses allegedly assumed by Dobbs to induce them to enter into a contract with Iarussi. The Johnsons also brought a third-party action against Iarussi on the indemnification agreement. Thereafter, Dobbs added a count to its complaint in which it sued Iarussi to recover damages based on the breach of an implied agreement to consummate his contract to purchase the property from the Johnsons under which Dobbs would earn a commission.
At the outset of the trial Iarussi (who was liable under the indemnification agreement for any judgment obtained by plaintiff against the Johnsons) was permitted to amend *277 his contentions in the pretrial order to assert that (1) the real estate commission was contingent upon the receipt of certain payments of part of the purchase price by the buyer, and (2) plaintiff forfeited rights to a commission by breach of its fiduciary duty owed to the Johnsons.
Iarussi then moved for a judgment of dismissal as a matter of law, based on plaintiff's opening statement and the pleadings, contending that the Johnsons' agreement to pay a commission was contingent upon the closing of title and receipt of the payments on account of the purchase price called for by the contract  a contingency which had not taken place. The trial judge denied the motion and ruled as a matter of law that (1) Dobbs' commission was earned on May 4, 1961 when the contract of sale was executed, although payment was deferred, and (2) even if the agreement to pay a commission was contingent, the action of the Johnsons in executing the release to Iarussi prevented fulfillment of the purported contingency and rendered the Johnsons liable for the commission.
The trial judge thereafter excluded evidence offered to show that it was never the intent or understanding of any of the parties that the commission would be earned when the contract of sale was executed and that it was contingent upon the title closing and payments of a portion of the purchase price.
Upon completion of the trial the court dismissed the Johnsons' counterclaim for lack of proof of damages. The only two issues submitted to the jury were (1) whether the broker received consideration for reducing the commission from $15,000 to $10,000, and (2) whether Iarussi was obligated to Dobbs under an implied contract. Following verdicts of $15,000 against them, defendants appealed.

I.
We consider first the appeal from plaintiff's judgment against the Johnsons for $15,000 for the brokerage commission and dismissal of the Johnsons' counterclaim.
*278 The primary issue to be decided is whether the trial judge was correct in (1) ruling that the commission clause unambiguously stated that the commission was earned when the contract was signed, and (2) barring testimony relating to the surrounding circumstances of the parties and their intentions as to when the commission would be earned.
Our cases hold that, in the absence of a special agreement, an authorized broker is entitled to a commission when he produces a buyer able and willing to buy on the seller's terms and the seller enters into a binding contract with the buyer, even though the buyer eventually proves to be financially unable to perform. Richard v. Falleti, 13 N.J. Super. 534, 536 (App. Div. 1951). However, the broker and seller may, by the use of appropriate language, condition the broker's right to a commission upon a future happening, such as the actual transfer of title.
Defendants argue that the language of the commission agreement clearly indicated that it was conditional, and the contingencies not having been fulfilled, they were entitled to a dismissal of the complaint as a matter of law. Plaintiff argues the language must be construed to mean that the commission was earned as of the date of the contract and that merely the time of payment was postponed. Both parties cite most of the decisions of our courts in point and attempt to distinguish them in order to support their views. It will suffice to state that the language used in the commission clause is not identical to any case called to our attention.
Plaintiff relies primarily on Winter v. Toldt, 32 N.J. Super. 443 (App. Div. 1954), and dictum in Hedden v. Folio, 62 N.J. Super. 470, 474 (App. Div. 1960). In Winter the commission clause provided that the commission would become due and payable upon execution of the deed and the closing of title. The court held that such provision did not qualify the broker's right to his earned commission; it merely postponed the time of payment. However, in Clark v. Jelsma, 40 N.J. Super. 58 (App. Div. 1956), where indistinguishable *279 language was used, Judge (now Justice) Francis pointed out that in Winter there was no appearance for respondent in the appeal, and that it was apparent that Lippincott v. Content, 123 N.J.L. 277 (E. & A. 1939) (where almost identical language was used), had not been cited to the court, nor was it mentioned, distinguished or explained. In both Clark and Lippincott, in deciding that such language indicated that the commission was based on a contingency which had not been fulfilled, the court considered evidence aliunde the written agreement.
We are satisfied that the meaning of the commission clause in the instant case cannot be decided as a matter of law on a plain meaning concept. We find the language to be ambiguous. It does not indicate with clarity whether the broker's right to a commission was contingent upon the actual closing of title and payment of a part of the purchase price to the buyer, or whether the commission was earned upon execution of the sales contract and payment thereof was to be deferred.
In Lippincott, supra, the court stated:
"Contractees are necessarily bound by the express conditions they themselves choose to incorporate in a contract. When construction becomes an issue, the significance ascribed by the parties to the mooted language, or plainly to be inferred from their conduct, is strongly influential in determining the meaning which was intended between them, and that course is usually adopted by the Court to be binding on the parties, since of their own accord they have made it obligatory on themselves." (Citations omitted; 123 N.J.L., at p. 279).
For other cases where courts have looked outside the writing to determine the nature of a commission clause, see Morse v. Conley, 83 N.J.L. 416 (Sup. Ct. 1912); Simon v. Garber, 3 N.J. Misc. 150, 127 A. 600 (Sup. Ct. 1925); Bell v. Siwoff, 123 N.J.L. 11 (Sup. Ct. 1939).
Defendants argue that the entire sales transaction was contingent upon Iarussi's securing financial backing to build a housing development; that all concerned knew this; *280 that all parties, including plaintiff, understood and intended that no commission was contemplated if Iarussi could not procure the necessary backing to go through with the deal. The trial judge disallowed any proof in support of these contentions. We consider such ruling to be in error, that testimony aliunde the writing should have been received in order that the intention and understanding of the parties with respect to the obligation to pay a commission might be determined intelligently.
While the trial judge held that the commission clause was not contingent, he also ruled as a matter of law that if it were contingent the Johnsons prevented the occurrence of the contingency by releasing Iarussi from performance of the sales contract and were thereby estopped from disclaiming Dobbs' right to a commission.
We do not agree. The judge indicated he based his ruling on Haber v. Goldberg, 92 N.J.L. 367 (E. & A. 1918), and Dermody v. New Jersey Realties, 101 N.J.L. 334 (E. & A. 1925). In each of those cases the broker had earned his commission and payment was deferred until the passage of title. They did not involve brokerage agreements which were contingent upon the happening of some future event.
In Todiss v. Garruto, 34 N.J. Super. 333 (App. Div. 1955), Judge Jayne distinguished the estoppel concept as depending upon whether the agreement was contingent or the commission had been earned and payment thereof was merely deferred. Referring to contingent agreements, the court said:
"The principle of law is that the condition upon which the payment of the commission is contractually made to depend is rendered legally inoperative only where the vendors have indulged in some affirmative act to hinder or prevent the consummation of the contract of sale." (at p. 339)
The court pointed out that a vendor cannot escape liability to the broker by invoking the contingency clause where the nonperformance of the sales contract is attributable to the *281 malfeasance or fraudulent, arbitrary, or capricious conduct of the vendor. However, the court stated that mere passive acquiescence by the vendor when the vendee defaults is not recognized as an act of prevention or hindrance. See also Joyce v. Stafford, 72 N.J. Super. 596, 604 (Cty. Ct. 1962), affirmed o.b. 78 N.J. Super. 256 (App. Div. 1963).
In such cases the burden of proof is upon the broker to establish by the preponderance of the credible evidence that the vendor willfully prevented the occurrence of the contingency by his act or deed, and good faith on the part of the vendor is a defense to the broker's action. Bruni v. Posluszny, 56 N.J. Super. 525, 531 (App. Div. 1959).
In the instant case we are satisfied that the trial judge erred when he ruled that even if the commission agreement were contingent the Johnsons were liable for the broker's commission as a matter of law. The case required a full disclosure of all the facts to show whether the vendors willfully, by wrongful acts or fraud, prevented the performance of the sales contract. Our review of the record indicates that the trial judge barred the introduction of such evidence.
Moreover, from such facts as appear in the record it is difficult to see what wrongful action the vendors took in this case. When the vendee delayed performance of the contract they were entitled to refuse to convey until accrued interest and taxes were paid. When the vendee brought suit for specific performance the vendors were justified in counter-claiming for specific performance on condition that such obligations were paid. It is clear that thereafter title was not closed because the vendee was financially unable to perform. The execution of mutual releases and temporary retention of the $2,500 deposit by the vendors until a subsequent sale of their property would seem to indicate they were passive victims searching only for available salvage. Cf. Todiss v. Garruto, supra, 34 N.J. Super., at p. 342, and Joyce v. Stafford, supra, 72 N.J. Super., at p. 604.
Since this case must be retried for the reasons above expressed, we believe it necessary to also point out *282 that the Johnsons should have been permitted to offer evidence to show a breach of the fiduciary obligation owed to them by plaintiff. A real estate broker is most strictly bound, within the scope of his employment, to the duty of absolute loyalty to his principal. If he breaches this duty, he forfeits his right to a commission. Soloff v. Josephson, 21 N.J. Super. 106, 107 (App. Div. 1952); 74 A.L.R.2d 437, 456-457 (1960).
We find no merit to the Johnsons' argument that the trial judge improperly dismissed their counterclaim without submitting it to the jury. The Johnsons failed to present adequate proof of their claim and produced no proof of damages.
For the reasons above expressed (1) the order dismissing the Johnsons' counterclaim is affirmed, and (2) the judgment in favor of plaintiff and against the Johnsons is reversed and the case remanded for a new trial.

II.
We turn next to the appeal from the judgment entered in favor of plaintiff against defendant Iarussi.
The court denied Iarussi's motion at the end of the case for a dismissal of the action brought against him by plaintiff based on the alleged breach of an implied agreement to perform the sales contract with the Johnsons so as to allow plaintiff to earn a commission on that transaction. The court submitted the issue to the jury which returned a verdict of $15,000 against this defendant. We are satisfied that the verdict cannot be sustained and that the trial court erred in denying Iarussi's motion for a dismissal.
Plaintiff's action against Iarussi was predicated on Tanner Associates, Inc. v. Ciraldo, 33 N.J. 51 (1960). In that case the broker appealed from an order granting a motion to vacate a writ of attachment. The affidavits filed in support of the writ alleged that defendants, who were seeking available sites for housing development purposes, employed *283 the broker to locate suitable lands on suitable terms which the defendants could buy, although the broker was to obtain his commission from the vendor. After securing a site approved by defendants a sales contract was entered into by the owner and defendants, which defendants thereafter repudiated. On appeal the court held that under the facts presented there was an implied contract, that in exchange for the broker's services in obtaining the lands the defendants would perform the sales contract enabling the broker to earn a commission from the vendor; that defendants having breached the implied contract they could be held liable for damages measured by the amount of the commission the broker would have earned had defendants performed as agreed.
Tanner does not stand for the broad proposition that whenever a prospective purchaser asks a broker to show him property he enters into an implied contract to perform a sales contract which will enable the broker to earn a commission. The facts in that case are distinguishable from the instant case. In Tanner, the purchaser actually employed the broker to look for property. In the instant case it does not appear that Dobbs was doing anything more than showing Iarussi property it already had listed for sale. In short, Dobbs was a mere selling agent for the Johnsons  there was no evidence of Dobbs' employment by Iarussi. See Brockway-Mecklenburg Co. v. Hilderman, 90 Mont. 317, 2 P.2d 1018 (Sup. Ct. 1931); Kinscherf v. Bistis, 105 Misc. 126, 173 N.Y.S. 547 (Sup. Ct. 1918); Messer-Johnson Realty Co. v. Newman, 210 Ala. 340, 98 So. 20 (Sup. Ct. 1923), all cited in Tanner, where recovery by the broker was denied because of failure to show that an agreement existed between the broker and purchaser.
We find no testimony in the record to support a contract, express or implied, between Dobbs and Iarussi. It was error to submit the issue to the jury. The judgment entered in favor of plaintiff against defendant Joseph Iarussi is reversed.