### BENJAMIN C. HINDS v. EUGENE T. HENRY.

1. To entitle a broker to commissions for services in negotiating a sale, the services must be rendered under an employment by his principal. Services rendered as a mere volunteer, without any employment, express or implied, will give no right to commissions.
2. The general rule is, that the right of a broker to commissions is complete when he has procured a purchaser able and willing to conclude a bargain on the terms on which the broker was authorized to sell.
3. This rule rests on the general usages of the business, and is liable to be modified or superseded by a special usage in relation to the particular transaction, or by special agreement between the parties.
4. A broker may, by special agreement with his principal, so contract as to make his compensation dependent on a contingency which his efforts cannot control, even though it relates to the acts of his principal.
5. In an action for the payment of money on a contingency, the pleader must aver, and it must be proved that the contingency has happened, or that performance was prevented by the other party by some wilful or fraudulent act, in violation of his own undertaking, express or implied.

On rule to show cause.

Eugene T. Henry, the defendant, was the owner of a tract of land in the State of Pennsylvania, containing about thirteen hundred acres. The title for a portion of the premises, called the Paschal tract, containing about one hundred and seventy acres, was in the defendant's father, of which the defendant, however, had the control. On the 6th of December, 1866, the defendant entered into an agreement, under seal, with the plaintiff, to employ him as his agent to sell the property on certain terms and conditions, which were specified, and agreed that the plaintiff should have, for his commissions, all the property should bring over $12,000. In this agreement, it was made a condition that the sale should be effected before January 15th, 1867. By a supplemental agreement, in writing, made on the 9th of January, 1867, the time mentioned for effecting a sale was extended for sixty

Hinds v. Henry.

days. On the 18th of February, 1867, Henry, by a power of attorney, under seal, constituted the plaintiff his attorney, with power to make agreements for the sale of the property, in accordance with the terms contained in the original agreement.

On the 28th of March, 1867, the plaintiff, under the above mentioned power of attorney, made an agreement in the name of his principal with Laubach & Riegel, to sell and convey to them the property in fee simple, clear of all encumbrances, for the sum of $15,000. On the 29th of March, 1867, the plaintiff and defendant executed another instrument, under seal, in which, after reciting the agreement of December 6th, 1866, and the agreement for sale made with Laubach & Riegel, it was stipulated as follows: " And now be it known that, by the said quoted agreement between the said B. C. Hinds and E. T. Henry, it was fully understood that any amount over and above the sum of $12,000 that the said B. C. Hinds might succeed in obtaining for the said property, should accrue to the use and benefit of the said B. C. Hinds, and he, the said B. C. Hinds, having succeeded in selling the said property at an advance of $3000, over and above the limit placed thereon, the said Eugene T. Henry hereby acknowledges himself indebted to the said B. C. Hinds in the said sum of $3000, payable to the said B. C. Hinds, the first half thereof (say $1500,) at the time that the purchasers of the property hereinbefore mentioned shall pay over the first half of the purchase money, and the balance at the expiration of one year from the date of the deed for said property, without interest."

At the day named for the delivery of the deed and the consummation of the agreement to purchase, the parties met. The purchasers were present, able and willing to conclude the purchase, by complying with the terms of sale. The Paschal tract had been previously sold for taxes, and a tax title was at that time outstanding, in a third person, which was invalid, but was then in litigation. The purchasers

being made aware of the cloud on the title, refused to proceed with the purchase.

Argued at June Term, 1873, before the CHIEF JUSTICE, and Justices DALRIMPLE, DEPUE and VAN SYCKEL.

For the plaintiff, *J. Vanatta.*

For the defendant, *J. G. Shipman.*

The opinion of the court was delivered by

DEPUE, J.   Upon the facts set out in the foregoing statement of the case, the plaintiff brought his action against the defendant to recover compensation for his services in negotiating the sale.   At the circuit, the cause was tried by the court—a jury being waived—and the finding of the court was in favor of the defendant.   The rule to show cause presents the question of the propriety of this finding, under the testimony produced before the court.

The declaration contains the common counts for work and labor, and services performed, and also a special count on the obligation of March 29th, 1867.

The plaintiff is not entitled to recover under the common counts.   To entitle a broker to commissions for his services in negotiating a sale, the services must be rendered under an employment and retainer by his principal.   Services rendered as a mere volunteer, without any employment, express or implied, will give no title to commissions.   *Edwards on Factors and Brokers* 144; *Cook* v. *Welch,* 9 *Allen* 350.   If the employment be by special agreement, the rights and liabilities of the parties will be determined by the terms of the agreement exclusively.   *Russell on Factors* 155; *Bower* v. *Jones,* 8 *Bing.* 65; *Warde* v. *Stuart,* 1 *C. B.* (*N. S.*) 88; *Jacobs* v. *Kolff,* 2 *Hilton* 133.

The employment of the plaintiff to negotiate a sale was by the first agreement between the parties, which was made on the 6th of December, 1866.   In express terms, the power

to sell was limited to the 15th of January, 1867. The sub-sequent extension enlarged the time until the 15th of March. On this latter day, the authority of the plaintiff and his employment terminated by the limitation in the agreement of the parties. The contract for the sale was made with Lau-bach and Reigel, on the 28th of March. The case does not disclose any agreement, express or implied, between the par-ties, for continuing the plaintiff's agency after the former agreement had expired, Consequently, the authority of the plaintiff was at an end when the contract with the purchasers was made. For services (if any) which the plaintiff had rendered towards the contract of sale, whilst the original employment subsisted, he could not have recovered for the reason that, under the agreement then in force, a sale on a day not later than the 15th of March, was a condition pre-cedent to the obligation of that agreement. After the lapse of that time, the employment of the plaintiff ceased, and thereafter he acted as a volunteer, with no power to represent the defendant, or to conclude a contract in his name, except such as was derived from the subsequent ratification of his acts by the defendant. The plaintiff testifies that the con-tract for sale was executed by himself, as the agent of the de-fendant, and by Laubach and Reigel, in duplicate, on the day it bears date, and that he delivered one copy to the defendant on the next day, when the obligation sued on was executed and given to him. The acceptance by the defendant of the contract to sell, made in his name by the plaintiff, as his agent, and the recitals in the obligation were an adoption of the contract, which made it binding on the defendant, as between him and the purchasers, but did not operate to con-fer upon the plaintiff any right other than such as is expressed in the obligation that was then executed. The parties in that instrument put in writing the understanding and agreement as between themselves. If any other engage-ments had previously existed, they were merged in this agreement. It is manifest that, independently of the obliga-tion of March 29th, 1867, the plaintiff can have no right of

action against the defendant, under either the common counts, or any other form of pleading.

The special count is founded on this obligation. Can the plaintiff under the evidence in the cause recover upon it? The general rule is that the right of the broker to commissions is complete, when he has procured a purchaser able and willing to conclude a bargain on the terms on which the broker was authorized to sell. When such a purchaser is produced, the principal cannot defeat the agent's right to compensation by a refusal, without sufficient reason to fulfill the agreement which the agent had power to make. *Prickett* v. *Badger*, 1 *C. B.* (*N. S.*) 296; *Lockwood* v. *Levick*, 8 *Ib.* 603; *Kock* v. *Emmerling*, 22 *How.* 69; *Cook* v. *Fiske*, 12 *Gray* 491; *Glentworth* v. *Luther*, 21 *Barb.* 145. This rule rests upon the general usage of the business, and is liable to be modified or superseded by a special usage in relation to the particular transaction, in connection with which the broker was employed, or by special agreement between the parties. Thus, in London, by the established usage, a ship broker negotiating the hiring of vessels, is not entitled to commissions until the chartering is completed, and cannot recover compensation unless the charter party is signed, even though the negotiation was rendered fruitless by the fault of the employer. *Read* v. *Rann*, 10 *B. & C.* 438; *Broad* v. *Thomas*, 7 *Bing.* 99; *Dalton* v. *Irvin*, 4 *C. & P.* 289.

The broker may also, by special agreement with his principal, so contract as to make his compensation dependent on a contingency which his efforts cannot control, even though it relate to the acts of his principal. A contract of that character is binding, and no action can be maintained until the contingency has arisen. *Bull* v. *Price*, 7 *Bing.* 237; *Alder* v. *Boyle*, 4 *C. B.* 635; *Moffat* v. *Laurie*, 15 *C. B.* 583; *Tombs* v. *Alexander*, 101 *Mass.* 255; *Walker* v. *Tirrell*, *Ib.* 257. In Bull *v.* Price the retainer was for the negotiation of the sale of a reversionary interest for a compensation of two per cent. on the sum obtained. The property was sold by the broker, and the proceeds paid into court, from which they

could only be obtained by an application, and were subject to a deduction for costs, and the value of an annuity charged on the estate. It was held that an action before the money was got out of court, was commenced too soon. In Alden *v.* Boyle, upon a negotiation between A and B for an exchange of advowsons, the defendant agreed to pay the broker .£100, "one-third down and the remaining two-thirds when the abstract of conveyance is drawn out." The defendant delivered the abstract of his title, but no abstract was delivered by the other party, and nothing further being done the negotiation dropped. In an action by the broker for the last payment of two-thirds of his commissions, it was decided that the action could not be maintained—the event, on the happening of which the plaintiff's right to that portion of the compensation agreed on, not having occurred.

By the contract in this case, the defendant obligated himself to pay the commissions agreed on—one half at the time the purchasers of the property should pay the first half of the purchase money, and the balance at the expiration of one year from the date of the deed, without interest. In an action on an obligation of this kind, the pleader must aver, and it must be proved at the trial, that the contingency on which the debt is payable has happened, or that it was defeated through some fault of the obligor. *Holdipp* v. *Otway,* 2 *Saunders* 106; *Walker* v. *Tirrell,* 101 *Mass.* 257; *Moffatt* v. *Laurie,* 15 *C. B.* 583. The contingency on which the plaintiff's compensation was dependent has never arisen. To excuse the absence of proof on this subject, the plaintiff relies on a class of cases which hold that the obligee is relieved from the necessity of proving performance of the condition, where performance has been prevented by the act of the obligor. The cases on this subject are quite numerous. *Malins* v. *Freeman,* 4 *Bing.* (*N. S.*) 395; *Doe* v. *Bancks,* 4 *B. & Ald.* 401; *Planche* v. *Colburn,* 8 *Bing.* 14; *Hall* v. *Conder,* 2 *C. B.* (*N. S.*) 22; *Inchbald* v. *The Western Co.,* 17 *Ib.* 733; *Horler* v. *Carpenter,* 2 *Ib.* 56; *Young* v. *Hunter,* 2 *Seld.* 204; *Hurlstone on Bonds* 49. But they

will be found, without exception, to be cases in which the obligee has prevented the performance of the condition by some wilful or fraudulent act, in violation of his own undertaking, express or implied.

In the present case, the cloud on the defendant's title, which ultimately broke off the contract to sell, was made known to the plaintiff when the power of attorney was given. The time when the title might be perfected was the subject of a letter, written by the defendant's father to the plaintiff, bearing date on the 20th of February, in which he says: " I left for Wilkesbarre to ascertain when, to a certainty, the title can be completed, and I dare say it will not be safe to say earlier than May 1st next, although it may be sooner." With this knowledge of a condition of the title that might create difficulty, the plaintiff concluded a contract for sale, binding the defendant to convey, on the 1st of May, in fee simple, clear of all encumbrances. At the time of these transactions, it was expected that the suit in which the validity of the tax title was to be determined would be tried at the following April term. It was laid over at that term in good faith, on account of the non-return of a commission, taken out for the examination of an important witness in a foreign country, and was not finally disposed of until February, 1868. When the obligation sued on was signed, the pending litigation was referred to. The plaintiff testified that the defendant then said, that if there was any likelihood of his losing the suit he would buy the parties off. At the time fixed for making the deed, the defendant's counsel exhibited to the counsel of the purchasers the proof—by the production of receipts for the taxes—that the tax title was worthless; and the clear weight of the evidence is, that the defendant offered to convey, leaving with the purchasers sufficient of the purchase money to indemnify them for any loss arising from an adverse termination of the litigation, or to convey the residue of the lands, omitting the tract which was in controversy. The purchasers declined to accept anything but an unclouded title, and the contract with them fell through.

The evidence shows that defendant made no fraudulent concealment of the defect in his title, and that the plaintiff acted with full knowledge that his efforts might be made abortive by the defendant's inability to convey as was stipulated. The sale fell through, not in consequence of any default of the defendant, but was defeated by the occurrence of a contingency, the possibility of the happening of which was known to both parties, and with respect to which they expressly contracted.

The result in the court below was, correct, and the rule to show cause should be discharged.