40 N.J. Super. 193 (1956)
122 A.2d 519
GEORGE H. BECKMANN, INC., PLAINTIFF-APPELLANT,
v.
(ZINKE'S) RAINBOW'S END, INC., AND KERWIN VON HOFF AND FRED T. PORTER, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued April 30, 1956.
Decided May 8, 1956.
*196 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Warren Dixon, Jr., argued the cause for appellant.
Mr. George F. Losche argued the cause for respondents (Mr. Francis L. Boyle, attorney).
The opinion of the court was delivered by JAYNE, J.A.D.
The fundamental rules and principles of law relative to a broker's right, if any, to commissions are so firmly established in our jurisprudence that the controversial issues of modern litigation in that field ordinarily concern the application of the acknowledged law to the facts of the particular case.
It is the basic legal rule that in the absence of some qualifying or oppugnant expression in the contract of employment, a broker who is duly engaged earns his commission when he procures for the owner a purchaser ready, able, and willing to comply with the terms specified in the authority thus conferred, or with other or different terms which, however, are satisfactory to the owner. Marschalk v. Weber, 11 N.J. Super. 16, 21 (App. Div. 1950), certification denied, 6 N.J. 569 (1951); Alnor Construction Co. v. Herchet, 10 N.J. 246, 253 (1952); Todiss v. Garruto, 34 N.J. Super. 333 (App. Div. 1955), certification denied, 18 N.J. 549 (1955), in all of which citations of the earlier decisions appear.
It must be recognized that the services of a broker merit compensation where he secures a buyer not necessarily on the terms originally propounded by the seller, but on terms ultimately settled by agreement between the seller and buyer. Steinberg v. Mindlin, 96 N.J.L. 206 (E. & A. 1921); Houston v. Siebert, 129 N.J.L. 468 (E. & A. *197 1943); Weinstein v. Weinstein, 10 N.J. Super. 68 (App. Div. 1950).
It is also to be realized that in the present action we are interested in two contractual obligations, the executed contract of sale between the vendor and vendee, and the agreement between the vendor and the broker.
Of the several terms and provisions of the April 26, 1954 contract of sale of the corporate defendant's restaurant and bar together with the parcel of real estate on which it was conducted at the corner of Tappan Road and Blanche Avenue, Norwood, Bergen County, for the purchase price of $60,000, the following is of present pertinency:
"Subject to * * * purchaser's accountant verifying a gross business of $70,000 for the year 1953."
Following the conclusion of the contract of sale is the brokerage agreement, to which VonHoff, the president, and Porter, the secretary of the corporate seller, subscribed their signatures. It reads:
"We agree to sell the above mentioned property at the above mentioned price and terms and agree to pay Geo. H. Beckmann, Inc., a commission of 7 1/2% of the selling price."
Upon an examination of the seller's business accounts the disclosure eventuated that the gross business for the year 1953 did not exceed $53,000, hence the purchaser declined to consummate the sale and the seller refused to pay the broker's commission.
The broker, the plaintiff herein, prosecuted the present action to recover its commission from the corporate seller, or in the alternative from the two individuals who personally signed the brokerage agreement without patently indicating that they did so as officers of the corporate owner, all the capital stock of which was owned by them and their respective wives.
The trial judge sitting without a jury concluded that the specification of the gross business during the year 1953, to *198 the verification of which the contract of sale was subject, constituted a condition of the contract of sale, and the plaintiff broker "having then procured a conditional purchaser, he could not become entitled to the commission until the condition of sale had been met." A judgment was rendered in favor of the defendants, from which the plaintiff appeals.
There is no doubt that a broker may, by a special agreement, conditionally make his compensation entirely dependent on a contingency. Hinds v. Henry, 36 N.J.L. 328 (Sup. Ct. 1873); Richard v. Falleti, 13 N.J. Super. 534 (App. Div. 1951); Todiss v. Garruto, supra. In that manner the broker's client can legally modify his obligation.
Not uncommon exemplifications of such special engagements are those brokerage agreements in which the accrual of the commission is expressly made contingent upon the actual fulfillment of the contract of sale. Illustrative expressions are "we shall be liable only in the event of passing of title" (Murray Apfelbaum, Inc., v. Topf, 104 N.J.L. 343 (E. & A. 1928)); "said commission to become due * * * upon closing title" (Lippincott v. Content, 123 N.J.L. 277 (E. & A. 1939)); "which commission * * * shall be payable if, as and when title actually closes and not otherwise" (Alexander Summer Co. v. Weil, 16 N.J. Super. 94 (App. Div. 1951)); "this commission is contingent upon the transaction being consummated and in the event that said transaction is not consummated then and in that event no commission shall be payable to said brokers" (Todiss v. Garruto, supra).
Initially it is to be observed that no expression or signification whatever is embodied in the instant brokerage agreement itself indicative of an intent to render the obligation to pay the commission contingent upon the complete consummation of the sale.
The existing state of the evidence also promotes the deduction that had the contemplated verification of the gross business ensued, the purchaser was ready, able, and willing to perform his contractual obligations.
*199 Indeed, within the area of controversy at the trial the only implicated contingency of a future complexion affecting the completion of the sale was the reserved opportunity of the buyer to verify the accuracy of information then particularly if not exclusively within the seller's knowledge.
The trial judge announced his persuasion that no legitimate inference could be logically derived from "the form and wording of the conditional clause of the contract" of sale indicating that the officers of the seller represented the gross business of the restaurant and bar to have been $70,000 during the year 1953. We do not concur in that conviction.
Our conclusion is that the evidence, uncontroverted and undiversified at the trial, generated the logically permissible inference that the seller at least impliedly represented that the operations of the restaurant and bar had as an already demonstrated fact attracted a gross business of $70,000 during the previous year of 1953. Thus, in consequence and in ultimate resultant effect, the seller had engaged the plaintiff to procure a purchaser of the premises and of the business thereon of that volume. The plaintiff did so. Cf. Kruse v. Ferber, 91 N.J.L. 470 (Sup. Ct. 1918); Klipper v. Schlossberg, 96 N.J.L. 397 (Sup. Ct. 1921). Coleridge remarked that "veracity does not consist in saying but in the intention to communicate truth."
The failure of the actual sale seems so far as appears from the evidence received to have been attributable to the seller's exaggeration. Contrast, Cohen v. Scola, 13 N.J. Super. 472 (App. Div. 1951).
Even where the principle relative to a special contingent brokerage agreement enunciated in Hinds v. Henry, supra, and in succeeding concordant decisions is applicable, the principle is not permitted to be utilized by a vendor unjustly to escape liability to the broker where, in consequence of the false and deceptive representation of the vendor, the truth or falsity of which is unknown to the broker, the consummation of the contract of sale is frustrated. Vide, Marschalk v. Weber, supra, 11 N.J. Super., at page 25. It is *200 an ancient maxim of the law that "no one is relieved or gains an advantage from his deceit."
The testimony of the plaintiff's representative who negotiated the contract of sale is significant in this particular:
"Q. Where did you get the information, Mr. Pramuk, that went into this agreement, that is, as to the price, the terms, the provision with regard to the liquor license and the gross business and also with regard to the stock? From whom did you get that information? A. I had gotten that information from Mr. VonHoff.
Q. Did you have any personal knowledge of the business done by this concern? A. I had no knowledge of what business was being done."
The law does not allow the otherwise established right of a broker to commission to be defeated by the default, or misrepresentations, or capricious acts of the principal which alone occasioned a rescission of the contract of sale. Kram v. Losito, 105 N.J.L. 588 (E. & A. 1929); Louis Schlesinger, Inc., v. Burstein Realty Co., 123 N.J.L. 190 (E. & A. 1939); Cohen v. Scola, supra.
Some analogous decisional illustrations of a principal's misrepresentations selected at random are found as to (a) the value of the property in Jones v. Briggs, 125 Me. 265, 132 A. 817 (Sup. Jud. Ct. 1926); (b) the maturity dates of mortgage encumbrances in Trent v. Goldberg, 265 Mass. 219, 163 N.E. 739 (Sup. Jud. Ct. 1928); (c) the dimensions of the property in Kasofsky v. Monahan, 128 Misc. 19, 217 N.Y.S. 188 (N.Y. Sup. Ct. 1926); (d) the amount of existing rents in Nelson, Lee & Green, Inc., v. Daly, 163 N.Y.S. 788 (N.Y. City Ct. 1917); (e) that property had been approved for loans guaranteed by F.H.A. in McKeever v. Washington Heights Realty Corp., 183 Md. 216, 37 A.2d 305, 311 (Ct. App. 1944).
However, in these brokerage cases in which the consummation of the sale is made subject to the existence of some condition or to the occurrence of some future intermediate contingency in the contract between the seller and the purchaser, the determinative fact to be ascertained is the intention intrinsic in the agreement between the broker *201 and his client, normally, as here, between the seller and the broker.
Thus, more specifically stated, the inquiry of supreme importance implicates whether it was the intention of the broker and his client that the commission of the former was to be regarded as earned upon the procurement by the broker of a purchaser ready, able, and willing to comply with the terms of sale satisfactory to the seller, or whether in the particular circumstances of the transaction it was the intention that the accrual of the broker's commission should be suspended dependently upon the actual consummation of the sale. An unconditional brokerage agreement may often precede in point of time the conditional contract of sale.
It has been in the pursuit of the aforementioned inquiry that courts have rendered divergent decisions. Illustrations may be appropriately mentioned. In Borowski v. Meyers, 195 Md. 226, 72 A.2d 701, 702 (Ct. App. 1950), the seller had misrepresented the volume of business done in the tavern in the contract of sale, resulting in its rescission. The seller had agreed to compensate the broker "if said realtor produces a customer to purchase said property." The broker was denied recovery on the authority of the decisions in our jurisdiction in Krim v. Sacks, 7 N.J. Misc. 318 (Sup. Ct. 1929), and in Bell v. Siwoff, 123 N.J.L. 11 (Sup. Ct. 1939), affirmed 124 N.J.L. 563 (E. & A. 1940).
In Borzillo v. Thompson, 57 A.2d 195 (D.C. Mun. Ct. App. 1948), the element of the vendor's misrepresentation was present and the broker recovered his commission. There the seller practiced deception upon the buyer concerning the rent derived from the tenancy of an apartment, the falsity of which representation was unknown to the broker.
And then, there can be little, if any, doubt that a broker in such instances cannot enforce the payment of his commission where he himself, perhaps in participation with the seller, has knowingly and purposefully promoted the insertion of a false representation in the contract of sale, which activity rendered the contract voidable. The related conduct of the broker may in this respect become relevant.
*202 The interests of justice predominate in our appellate considerations. In the existing state and dimensions of the evidence in the present case, the full and complete transcript of which we obtained and examined, we conclude that the judgment was erroneous, but we observe that it was a ruling of the trial judge advocated by the attorney of the plaintiff-appellant that served in fact under its interpretation to enjoin at the trial any exploration of the cooperative participation, if any, of the plaintiff's salesman in introducing the so-called condition in the contract of sale which, we note, was composed in its literal import by the salesman. Additionally, the circumstances under which the initial deposit was temporarily retained by the broker and the possibly pertinent significance thereof were not elucidated. The amount of the commission is relatively substantial.
It is not judicially prudent for us to undertake the task of leveling the walls of precedents in the present case of limited factual material. We prefer to adopt the functional attitude. Distinctions between precedents may well reduce them to mere shadows. Law can be argued, law can be administered only in relation to facts. Here the fields were not adequately tilled.
For those reasons a final judgment for the claimed commission will not be granted to the plaintiff as requested. Preferably the judgment under review is reversed and the action remanded for a new trial.