**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0262-18T3

GEBROE-HAMMER ASSOCIATES,

    Plaintiff-Appellant/
    Cross-Respondent,

v.

DEAL LAKE VILLAGE GARDENS,
LLC,

    Defendant/Third-Party
    Plaintiff-Respondent/
    Cross-Appellant,

v.

406 DEAL LAKE, LLC,

    Third-Party Defendant/Second
    Third-Party Plaintiff,

v.

BRAD SMITH, TODD SMITH and
DEAL LAKE VILLAGE GARDENS,
LLC,

    Second Third-Party Defendants.

_____

Argued October 2, 2019 – Decided January 28, 2020

Before Judges Vernoia and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-1437-16.

David Jay Klein argued the cause for appellant/cross-respondent (Brach Eichler, LLC, attorneys; David Jay Klein, of counsel and on the briefs).

David Michael Hutt argued the cause for respondent/cross-appellant (Hutt & Shimanowitz, PC, attorneys; David Micheal Hutt, on the briefs).

PER CURIAM

Plaintiff, Gebroe-Hammer Associates, appeals from the trial court's judgment for defendant, Deal Lake Village Gardens, LLC, dismissing plaintiff's breach of contract action. Plaintiff and defendant entered into an exclusive listing agreement pursuant to which plaintiff agreed to broker the sale of an apartment complex located at 406 Deal Lake Drive in Asbury Park, New Jersey (the property). Plaintiff brought suit claiming that it is entitled to a commission under the agreement. Plaintiff contends that although the property was sold after the exclusive listing agreement expired, it had introduced the eventual purchaser to the property, which, plaintiff argues, is sufficient to earn the commission under the agreement. Defendant disputes that plaintiff did enough by way of

2

"introducing" the property and also contends that the person with whom plaintiff communicated about the property was not the ultimate purchaser.

With the parties' agreement, the Law Division judge convened a bench trial based on the discovery record. After reviewing the documentary evidence, the judge found that plaintiff had introduced the property to a person who was an "undisclosed principal" of the newly formed corporation that purchased the property. The trial court determined that was not sufficient to entitle plaintiff to a commission. The court applied the "efficient procuring cause" doctrine to impose additional prerequisites for earning a commission. Because plaintiff failed to satisfy those additional conditions, the trial court entered judgment for defendant.

We have considered the parties' arguments in light of the record and applicable legal standards. We conclude that the trial court should not have relied on the efficient procuring cause doctrine because the contract explicitly set forth when and in what circumstances plaintiff would be entitled to a commission. In doing so, the court imposed on plaintiff different preconditions to receiving a commission than those agreed to by the parties. The court, in other words, effectively rewrote the contract agreed to by sophisticated parties familiar with commercial real estate transactions. We hold that the trial court

A-0262-18T3

erred in superimposing the additional requirements of the efficient procuring cause doctrine.

We therefore reverse the judgment and remand for the trial court to determine whether plaintiff is entitled to a commission under the specific terms of the agreement as written. In making that fact-sensitive determination, the trial court must determine whether the property was sold to or on behalf of the person who was introduced to the property by plaintiff. That determination, in turn, requires the court on remand to ascertain the intended meaning of the portion of the agreement that specifies when plaintiff earns a commission.

I.

After discovery, both parties filed motions for summary judgment. The first judge to hear the case denied those motions and referred the matter to another judge for trial. The second judge conducted a one-day bench trial on the papers the parties had submitted to the first judge. The trial judge entered judgment in defendant's favor and issued an order dismissing plaintiff's complaint with prejudice. Plaintiff appeals from that judgment. Defendant contends in a cross-appeal that the trial court misinterpreted and misapplied the contract when it found that the individual to whom plaintiff had introduced the

A-0262-18T3

property was an undisclosed principal of the corporation that ultimately purchased the property.

II.

On October 13, 2014, plaintiff and defendant entered into an exclusive listing agreement concerning the property defendant owned. The agreement provides:

> In consideration for listing and endeavoring to sell or exchange [the property], [defendant] or authorized Agent of [defendant], grant [plaintiff] the exclusive right to sell said property at the price and upon terms set forth herein or at any other terms or price the undersigned may agree to accept.
>
> Upon [plaintiff] procuring a purchaser, [defendant] agree[s] to pay you a commission of [3.5%] of gross sales price.
>
> [Plaintiff's] commission shall be considered earned if the property is sold or exchanged by anyone during this exclusive period. If a sale or exchange is consummated after the termination of this agreement to or on behalf of a party who was introduced to the property by [plaintiff], [plaintiff] will also be entitled to the full commission.

The agreement was set to expire on January 20, 2015, and it initially set a listing price of $7,000,000. The parties entered into a second exclusive listing agreement that expired on April 1, 2015. The terms of the second agreement

5

were identical to the initial agreement except as to purchase price, which was reduced to $6,250,000.

At some point in 2014, Adam Zweibel, a salesperson employed by plaintiff, scheduled a breakfast meeting with Peter Siegel to discuss real estate in Asbury Park. Siegel was known to participate in the Asbury Park real estate market. On October 14, 2014, Zweibel sent a follow-up email to Siegel concerning the property. Zweibel's email included a confidential offering memorandum consisting of a financial summary, description of the property, and demographic information about the surrounding area. Siegel replied that he was not interested in the property due to its high asking price.

Plaintiff failed to locate a buyer for the property before the second exclusive listing agreement expired on April 1, 2015. On June 2, 2015, defendant entered into an exclusive listing agreement with another broker, John C. Conover Agency (Conover). The agreement between defendant and Conover had a listing price of $6,250,000 and was to remain in force for a period of six months.

On June 11, 2015, Zweibel sent an email to Siegel erroneously suggesting that plaintiff was still the exclusive listing broker of the property. Siegel reacted to Zweibel's email by contacting the broker who actually had exclusive listing

rights at that time, Conover. Siegel informed Conover that plaintiff "w[as] one of the brokers that brought it to me last year when they had it." Siegel added that he did "not want to be in the middle of dueling brokers."

Beginning on June 12, 2015, Siegel made a series of three incremental offers for the property. Those offers were for a purchase price of $5,000,000, $5,030,000, and $5,180,000, respectively. Defendant declined all three offers. Siegel made the first of these ascending offers the day after he received the email from Zweibel that incorrectly stated that plaintiff was still the exclusive listing broker.

On July 9, 2015, another person, Lindsay Ornstein, made an offer for the property to a sales representative at Conover, Anthony Newarski. Her offer was for a purchase price of $5,600,000. Defendant accepted this offer. Ornstein claims to have made the offer after performing her "normal due diligence and underwriting" and after looking at the "projected income[,] . . . operating [expenses] of the building[,] . . . [and] capital improvements needed." Ornstein further stated that "publicly available" information and the information Newarski provided supported the decision.

On July 20, 2015, Ornstein and others formed a corporation known as 406, referring to the mailing address of the property. 406 formally contracted for and

took title to the property. 406 is comprised of approximately fifteen investors, including Siegel and Ornstein. Both Ornstein and Siegel own a ten to twenty percent interest in 406.

Ornstein claims that at the time she made the offer for the property, she was unaware that Siegel would become an investor. She attested that it was her common practice to "tie up" a property with an offer and then subsequently raise the capital for the purchase through a network of investors.

She also claimed she had not seen any sales or marketing materials prepared by plaintiff prior to her offer. However, the record shows that Ornstein had discussed the property with Siegel, at least to the extent that she was aware that Siegel had previously submitted unsuccessful bids valued below the $5,600,000 price she eventually tendered. The record also indicates that Siegel signed the contract for the sale of the property on behalf of 406.

III.

We begin our analysis by acknowledging the applicable standard of review. Our review of a judgment entered in a non-jury case is limited. Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011). We defer to a trial court's fact-finding, even where it does not depend on assessing live witnesses' demeanor. The trial court's factual findings therefore remain entitled to

deference even though the record before the court in this case consisted solely of documentary evidence. An appellate court is simply not as experienced nor as capable as the trial court at making credibility assessments or factual findings. State v. S.S., 229 N.J. 360, 379–81 (2017). Thus, we should not disturb a trial court's factual findings made from a documentary record if those findings are supported by "sufficient credible evidence." Id. at 381 (citing State v. Gamble, 218 N.J. 412, 424 (2014)).

In contrast, an appellate court reviews questions of law de novo. State v. Gandhi, 201 N.J. 161, 176 (2010) (citing Toll Bros. v. Twp. of W. Windsor, 173 N.J. 502, 549 (2002)). Accordingly, a "trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Manalapan Twp. Comm., 140 N.J. 366, 378 (1995). Mixed questions of law and fact are subject to a similar de novo standard of review. Cumberland Farms, Inc. v. N.J. Dep't Envtl. Prot., 447 N.J. Super. 423, 438 (App. Div. 2016) (citing In re Malone, 381 N.J. Super 344, 349 (App. Div. 2005)).

We next consider the principles of contract law that address specifically when a broker is entitled to a commission. In this instance, the trial court rejected plaintiff's claim for breach of contract after determining that plaintiff

was not the "efficient procuring cause" of the sale. The efficient procuring cause doctrine, sometimes referred to as the efficient "producing" cause doctrine, is a tool case law developed to ensure equitable results when a contract does not otherwise expressly specify the conditions precedent to earning a commission. See First N.H. Corp. v. Van Syckle, 37 N.J. Super. 469, 472 (App. Div. 1955) (articulating the rule that a broker is the efficient procuring cause of a transaction if he or she "caused a person to negotiate with defendant and that person purchased the stock and paid the price without a substantial break in the ensuing negotiations"). The basic application of the doctrine is

> in the absence of some qualifying or oppugnant expression in the contract of employment, a broker who is duly engaged earns his commission when he procures for the owner a purchaser ready, able, and willing to comply with the terms specified in the authority thus conferred, or with other or different terms which, however, are satisfactory to the owner.
>
> [George H. Beckmann, Inc. v. (Zinke's) Rainbow's End, Inc., 40 N.J. Super. 193, 196 (App. Div. 1956) (citing Marschalk v. Weber, 11 N.J. Super 16, 21 (App. Div. 1950)).]

Accordingly, our courts have applied the doctrine "to permit a broker to recover a commission upon a sale made [even] after [the] expiration of an exclusive . . . brokerage contract." Leadership Real Estate, Inc. v. Harper, 271 N.J. Super. 152, 171 (Law Div. 1993).

When the doctrine applies, a "broker must prove that he or she caused his or her customer to negotiate with the seller and that the transaction is later consummated through direct negotiations between the seller and the broker's customer, even though the seller accepts terms different from those expressed in the listing agreement." Ibid. Of particular importance in this case, the doctrine further provides that the customer must make the purchase without a substantial break in the ensuing negotiations. Ibid. The mere act of introducing a buyer to the property is not enough to constitute an efficient procuring cause of the sale. See C.B. Snyder Realty Inc. v. BMW of N. Am. Inc., 233 N.J. Super. 65, 81 (App. Div. 1989) ("[I]t is clear that plaintiff introduced [the defendant] to the property. However, that does not suffice to establish plaintiff's claim to a commission.").

Here, as the trial court found, plaintiff did not satisfy the requirements of the efficient procuring cause doctrine given the substantial break in negotiations between Siegel and plaintiff before the property finally sold. However, the threshold question before us is not whether plaintiff satisfied all of the prerequisites of the efficient procuring cause doctrine, but rather whether that doctrine should be invoked when a contract specifies when a commission should be paid.

11

The efficient procuring cause doctrine fills a void when a contract fails to specify when a commission is earned after the expiration of an exclusive listing agreement. We are not aware of any authority, however, that holds that this doctrine is automatically embedded in every exclusive listing agreement. The doctrine, while frequently applied by New Jersey courts, does not foreclose parties from agreeing to a different formulation, especially when, as in this case, both parties to a contract are sophisticated and experienced in the sale of commercial realty. As we have noted, the doctrine applies "in the absence of some qualifying or oppugnant expression in the contract," George H. Beckmann, Inc., 40 N.J. Super. at 196, indicating that the contract terms take precedence. Brokers and commercial property sellers, in other words, are not precluded as a matter of law or public policy from entering into a contract that provides that introduction of the property to the buyer is sufficient to justify a commission.

In sum, we hold that when a contract between a broker and property seller explicitly sets forth the circumstances when the broker is entitled to a commission, a court called upon to review and enforce the contract must look first to the terms of the contract. A court may not superimpose onto the contract the elements of the efficient procuring cause doctrine if the contract adequately expresses the agreement of the parties as to when the broker is entitled to a

12

commission.  See Grubb & Ellis/Centennial, Inc. v. Gaedeke Holdings, Ltd., 401 F.3d 770, 774, 778–79 (6th Cir. 2005) (holding the procuring cause doctrine does not apply when the contract does not require a party to establish it was the procuring cause); Aerotronics, Inc. v. Pneumo Abex Corp., 62 F.3d 1053, 1064 (8th Cir. 1995) ("[t]he procuring cause doctrine is limited by the terms of a contract; it cannot be used to supplant or contradict the terms of a contract entered into between parties."); Meyer Group, Ltd. v. United States, 121 Fed. Cl. 105, 125 (2015) ("However, it is settled law that when a brokerage agreement sets forth what actions a broker must take to be entitled to a commission, the terms of that agreement override any procuring cause analysis.").

We believe this approach is consonant with the foundational principle that a contract cannot be written by the court "for the parties better than or different from the one they wrote for themselves."  GMAC Mortg., LLC, v. Willoughby, 230 N.J. 172, 186 (2017) (quoting Kieffer v. Best Buy, 205 N.J. 213, 223 (2009)).  Rather, when examining a contract, the task of the reviewing court is to "enforce the contract according to its terms, giving those terms 'their plain and ordinary meaning.'"  Ibid. (quoting Kieffer, 205 N.J. at 223).

A-0262-18T3

We next address whether plaintiff satisfied the terms of the contract that prescribe when a commission is earned for a sale occurring after the exclusive listing period has expired.  In evaluating a contract, "the terms of the agreement must 'be sufficiently definite [so] "that the performance to be rendered by each party can be ascertained with reasonable certainty."'"  Id. at 185 (quoting Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435 (1992)).  In this instance, the paragraph of the contract pertaining to plaintiff's entitlement to a commission after expiration of the exclusive listing is hardly a model of precise draftsmanship.

The specific provision at the heart of this appeal provides:

> Your commission shall be considered earned if the property is sold or exchanged by anyone during this exclusive period.  If a sale or exchange is consummated after the termination of this agreement to or on behalf of a party who was introduced to the property by [plaintiff], [plaintiff] will also be entitled to the full commission.

[Emphasis added.]

A.

Defendant argues that the contract insufficiently defines the word "introduced," and that plaintiff's actions did not constitute a sufficient

introduction of Siegel to the property. We disagree, as did the trial court, and we affirm that part of the trial court's opinion.

The trial court reasoned that because "both parties . . . have ample experience in drafting legal documents involving real estate[,] [i]t would be inappropriate to simply construe against the plaintiff for failing to include a definition of [']introduce['] being that the defendant failed to include a definition as well." The trial court went on to explain that, when employing a modern perspective, "reasonable people would automatically interpret 'introduce' to include a variety of modes of communication, such as email, that can be used by brokers to disseminate real estate offerings."

We concur with the trial judge that the term "introduce" as used in the contract means familiarizing a potential purchaser with a property, and that the email and attached prospectus detailing the property that plaintiff's agent sent to Siegel "was enough to pique Siegel's interest in the building as an investment opportunity." Accordingly, we accept the trial court's finding that plaintiff introduced the property to Siegel within the meaning of the contract.

B.

We turn next to defendant's contention that Siegel was not a party to whom the sale was consummated within the meaning of the contract. Both parties

15

presented evidence in support of their respective positions with respect to Siegel's role in consummating the purchase. After reviewing that evidence, the trial court found that Siegel acted as an undisclosed principal for 406.[1]

We generally defer to a trial court's findings of fact, <u>Seidman</u>, 205 N.J. at 169, and accordingly, we defer to the trial court's finding that Siegel became a principal of 406. A critical fact-sensitive question that remains unresolved, however, is what the parties to the contract intended by the phrase, "[i]f the property is sold or exchanged . . . to or on behalf of a party who was introduced to the property." Did the parties intend, for example, that plaintiff would receive a commission based on introducing the property to a person who becomes an investor in a corporation after a winning bid is placed by another person but before the newly formed corporation consummates the final purchase of the property? That contract interpretation question must be resolved before a court can determine whether the property was sold "to or on behalf of" Siegel.

---

[1] In this instance, the plaintiff introduced the property to a person, Siegel, who acquired a ten to twenty percent interest in the purchasing corporation after the winning bid was placed. However, Siegel discussed the property with Ornstein before she placed the winning bid. Furthermore, Siegel became an investor in 406 before the sale was consummated, and indeed, he was the individual who signed the contract for the sale of the property on behalf of 406.

A-0262-18T3

We deem it inappropriate for us to exercise original jurisdiction to determine the intended meaning of this contract provision.[2]  See R. 2:10-5 ("The appellate court may exercise such original jurisdiction as is necessary to complete the determination of any matter on review." (emphasis added)); Price v. Himeji, LLC, 214 N.J. 263, 294–96 (2013) (explaining that R. 2:10-5 "allow[s an] appellate court to exercise original jurisdiction to eliminate unnecessary further litigation, but discourage[s] its use if factfinding is involved." (alteration in original) (quoting State v. Santos, 210 N.J. 129, 142 (2012))).  We therefore remand the matter for the trial court to make findings as to the meaning of this portion of the contract,[3] and then to apply that interpretation to the facts relating to Siegel's role with regard to purchase of the property in this case.  Nothing in

---

[2]  Both parties in this case chose to have the trial decided by the judge based upon the same documents and deposition transcripts that had been submitted in their respective motions for summary judgment.  We leave it to the discretion of the trial court on remand whether additional testimony or other evidence is needed to interpret the agreement and ascertain the intent of the contracting parties.  See N.J. Div. of Child Prot. & Permanency v. S.W., 448 N.J. Super. 180, 183, 192–93 (App. Div. 2017) (opining that parties are not entitled to hear a case on the papers, rather it is in the judge's discretion whether to proceed in that manner or not).

[3]  We leave it to the trial court to determine in the first instance whether this portion of the contract is not "sufficiently definite [so] 'that the performance to be rendered by each party can be ascertained with reasonable certainty.'" GMAC Mortg., LLC, 230 N.J. at 185 (quoting Weichert Co. Realtors, 128 N.J. at 435).

17

this opinion should be construed as expressing our view on how broadly or narrowly this portion of the exclusive listing agreement should be interpreted.

## V.

Defendant contends that plaintiff violated the implied covenant of good faith and fair dealing by failing to identify, when the contract ended, all individuals plaintiff introduced to the property. In support of this contention, defendant cites King v. Dean, 249 N.E.2d 45 (Ohio 1969). In that case, the Ohio Supreme Court determined that a broker has an obligation to disclose to the seller the identity of those persons with whom the broker had negotiated during an exclusive listing agreement. Id. at 47. Defendant concludes that this obligation should be imposed under "New Jersey's fairness requirement." So far as we can determine, no New Jersey court has adopted this rule.[4]

---

[4] The position staked out by the Supreme Court of Ohio appears to be the minority rule on the matter of a real estate broker's duty to inform owners of potential purchasers contacted by the broker. Easton Bus. Opportunities, Inc. v. Town Exec. Suites E. Marketplace, LLC, 230 P.3d 827, 833 (Nev. 2010). The majority rule is that a real estate broker's entitlement to a commission is not dependent upon the owner's knowledge of the broker's role in procuring the purchaser of the property. T.C. Williams, Annotation, Real-Estate Broker's Right to Commissions as Affected by Owner's Ignorance of Fact That Purchaser Had Been Contacted by Broker, 142 A.L.R. 275 (1943 & Supp. 2010). Our courts have adhered to the majority rule with few exceptions. Walsh v. Isgro, 121 N.J.L. 165, 169 (E. & A. 1938); McLaughlin v. Campbell, 78 N.J.L. 541, 548 (E. & A. 1909) ("[T]he plaintiff's right of recovery is not dependent upon

A-0262-18T3

Every contract in New Jersey contains an implied covenant of good faith and fair dealing. Sons of Thunder, Inc. v. Borden, Inc., 148 N.J. 396, 420 (1997). This covenant requires that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." Id. (quoting Palisades Props., Inc. v. Brunetti, 44 N.J. 117, 130 (1965)).

We appreciate that if plaintiff were to prevail, defendant will have to pay a commission to two brokers.[5] We do not believe, however, that plaintiff injured the right of defendant to receive the fruits of the contract.[6] On the record before us, we decline to follow the lead of the Supreme Court of Ohio by imposing a duty on real estate brokers to disclose to property sellers the names of all individuals they introduce to property that is subject to an exclusive listing

the knowledge of the defendant that the purchaser came to purchase in consequence of information obtained through the plaintiff."); but see Resky v. Meyer, 98 N.J.L. 168 (E. & A. 1922) (holding broker not entitled to commission where broker's customer purchased real estate from owner through a dummy buyer).

[5] We note that Conover, the broker that replaced plaintiff, was alerted to the fact that Siegel had discussed the property with plaintiff.

[6] In the particular circumstances of this case, we believe that those who form a new corporation whose sole purpose is to purchase and hold title to a particular property can ascertain whether investors had previously been introduced to the property.

agreement.  The parties to an exclusive listing agreement are of course free to include such a registration requirement as a term of the contract, just as they are free to incorporate the elements of the efficient procuring cause doctrine into the terms of the contract.

To the extent we have not already addressed them, any other arguments raised by defendants on this appeal do not have sufficient merit to warrant discussion in this written opinion.  R. 2:11-3(e)(1)(E).

## VI.

For the foregoing reasons, we reverse and remand this matter for the trial court to determine whether the sale of the property was "to or on behalf" of Siegel within the meaning of the exclusive listing agreement.  We do not retain jurisdiction.

Reversed and remanded.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-0262-18T3